IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

WHITNEY HALLER and            )            4:19CV3028
LEE WIESE, on behalf of       )
WILLIAM WIESE, a minor child, )
                              )
            Plaintiffs,       )
                              )            MEMORANDUM
        v.                    )            AND ORDER
                              )
COUNTY OF DUNDY,              )
NEBRASKA,                     )
JUSTIN NICHOLS, Dundy County  )
Sheriff, in his official capacity, and )
CHARLES THIBEDEAU, in his     )
individual capacity,          )
                              )
            Defendants.       )

This matter is before the court on a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the court finds that the motion to dismiss should be granted in part (with respect to a federal constitutional claim) and that the case should be remanded to state court pursuant to 28 U.S.C. § 1367(c).

## I. Introduction

On March 29, 2019, Defendants County of Dundy, Nebraska ("Dundy"), and Justin Nichols, Dundy County Sheriff, in his official capacity ("Nichols") (collectively, the "County"),[1] removed this action from the District Court of Dundy

---

[1] "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Although the Eighth Circuit has stated that "a suit against

County, Nebraska, with the consent of Defendant Charles Thibedeau ("Thibedeau"), on the basis of federal question jurisdiction (Filing 1). *See* 28 U.S.C. §§ 1331, 1441(a) & (c). Plaintiffs are Whitney Haller ("Haller") and William Wiese ("Wiese"), who sues on behalf of his minor son, William Wiese ("minor Wiese") (Filing 1-1).

The case concerns the unlawful seizure and sexual assault of Haller by Thibedeau on March 22, 2017, while Thibedeau was on duty as a deputy sheriff for the County and Haller was caring for minor Wiese (Filing 1-1, ¶¶ 23-34). On January 18, 2018, Thibedeau was convicted by a jury in the District Court of Dundy County of kidnapping (a class II felony),[2] third degree sexual assault (a class I misdemeanor)[3], and oppression under color of offense (a class III misdemeanor),[4] and was subsequently sentenced to consecutive terms of imprisonment for a minimum of 7½ years (Filing 1-1, ¶¶ 37, 38).

Plaintiffs' complaint (Filing 1-1) contains six claims (counts I-VI). Counts I and II are alleged against the County, while counts III through VI are alleged against

---

a government official in only his official capacity should be dismissed as redundant if the employing entity is also named," *King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018) (citing *Veatch*, 627 F.3d at 1257), Nichols has not moved for dismissal on this basis.

[2] *See* Neb. Rev. Stat. § 28-313 ("A person commits kidnapping if he abducts another.... If the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without having suffered serious bodily injury, prior to trial, kidnapping is a Class II felony.").

[3] *See* Neb. Rev. Stat. § 28-320 ("Any person who subjects another person to sexual contact ... without consent of the victim ... is guilty of sexual assault in ... the ... third degree ... if the actor shall not have caused serious personal injury to the victim.").

[4] *See* Neb. Rev. Stat. § 28-926 ("Any public servant or peace officer who, by color of or in the execution of his office, shall designedly, willfully, or corruptly injure, deceive, harm, or oppress any person, or shall attempt to injure, deceive, harm, or oppress any person, commits oppression under color of office ....").

Thiebedeau.[5] On April 5, 2019, the County filed a motion to dismiss counts I and II for failure to state a claim upon which relief can be granted (Filing 3), together with a supporting brief (Filing 4). Plaintiffs filed an opposing brief on May 10, 2019 (Filing 14), and the County replied on May 17, 2019 (Filing 15).

Count I is a negligence claim, in which Plaintiffs allege that the County breached its duty of care to screen, hire, train, and supervise deputy sheriffs in order to protect the public from foreseeable risks of harm posed by the deputies (Filing 1-1, ¶¶ 40-42). Count II is a constitutional tort claim, brought pursuant to 42 U.S.C. § 1983, in which Haller alleges that County policies, customs, and practices violated her constitutional rights, including her Fourth Amendment right to be free from unreasonable searches and seizures (Filing 1-1, ¶¶ 48, 51).[6] The County contends that there are not sufficient facts alleged to support either claim, and, with respect to count I, that Nebraska's Political Subdivisions Tort Claims Act does not waive sovereign immunity for claims arising out of intentional torts, *see* Neb. Rev. Stat. § 13-910(7).

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,

---

[5] Counts III, IV, and V are common law claims brought by Haller for assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress. Count VI is a common law claim brought on behalf of minor Wiese for negligent infliction of emotional distress.

[6] Haller also claims in count II that the County violated rights guaranteed to her under the Nebraska Constitution and state law (Filing 1-1, ¶ 48), which claim is not actionable under § 1983. See *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("Section 1983 guards and vindicates federal rights alone."). This claim will not be addressed herein.

supported by mere conclusory statements, do not suffice." *Id.* Rather, well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id.* at 679. That is, they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Usenko v. MEMC LLC*, __ F.3d __, No. 18-1626, 2019 WL 2344827, at *2 (8th Cir. June 4, 2019).

A plaintiff satisfies the plausibility requirement when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires the plaintiff to allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

In assessing a motion to dismiss, the court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See id.* at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

A complaint's factual allegations do not need to be "detailed," but they must be "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The plaintiff is obligated to provide within his complaint sufficient facts to establish "the grounds of his entitlement to relief." *Id.* (cleaned up). The reviewing court should not assume the truth of allegations that are merely conclusory in nature, *Iqbal*, 556 U.S. at 681, and should reject "catch-all assertions of law and unwarranted inferences," *Rand-Heart of N.Y., Inc. v. Dolan*, 812 F.3d

1172, 1176 (8th Cir. 2016) (quoting *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002)); *see In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019).

## III. The Underlying Facts

For purposes of ruling on the County's Rule 12(b)(6) motion to dismiss, the court accepts as true the following allegations of fact, which Plaintiffs have incorporated by reference into counts I and II of their complaint:

> 13. ... Defendant Sheriff Nichols appointed Defendant Charles Thibedeau as a full-time Deputy Sheriff for Dundy County on or about October 1, 2016 ("Appointment").[7]
>
> * * *
>
> 15. After the Appointment, Defendant Sheriff Nichols directly and indirectly supervised Defendant Deputy Thibedeau.
>
> * * *
>
> 17. At all times relevant herein, Defendant Deputy Thibedeau was not a certified law enforcement officer. Defendant Deputy Thibedeau never obtained a certificate or diploma from the Nebraska Commission on Law Enforcement and Criminal Justice or from the Nebraska Law Enforcement Training Center.
>
> 18. ... Defendant Deputy Thibedeau was not qualified to be a law enforcement officer in this state, did not meet the minimum

---

[7] This allegation is made "upon information and belief" (Filing 1-1, p. 4, ¶ 13). "The *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted); *see Stamm v. Cty. of Cheyenne*, 326 F. Supp. 3d 832, 855-56 (D. Neb. 2018) (citing additional cases).

requirements to be a law enforcement officer, and had physical and aggressive behaviors and past illegal drug use in his history, all which should have prohibited Defendant Deputy Thibedeau from becoming a law enforcement officer in any capacity.[8]

19.     Despite Defendant Deputy Thibedeau's lack of certification as a law enforcement officer and background, Defendant Dundy County employed and Defendant Sheriff Nichols appointed Defendant Deputy Thibedeau to protect the lives and property of the public, held him out as a person who could and would protect the public from harm, and equipped him with a uniform, marked patrol vehicle, and handcuffs.

*  *  *

23.     On March 22, 2017, while on duty as a Deputy County Sheriff for Dundy County, Defendant Deputy Thibedeau sent messages to Ms. Haller, stating he wanted to discuss a law enforcement matter with her. Confused, Ms. Haller asked if Defendant Deputy Thibedeau could come to her home where she was caring for and supervising five-year-old minor Wiese. Defendant Deputy Thibedeau responded that he could not come to her home or talk with her on the phone. Instead, Defendant Deputy Thibedeau told her to meet him at a remote location, the Benkelman Golf Club, and that her significant other, Mr. Wiese could not go with her.

24.     Ms. Haller complied with Defendant Deputy Thibedeau's directions and drove to the Benkelman Golf Club with five-year-old William in the backseat of her vehicle.

25.     At the Benkelman Golf Club, Ms. Haller parked her vehicle near Defendant Deputy Thibedeau's marked patrol pickup. No other persons or vehicles were present. Defendant Deputy Thibedeau had parked behind a line of buildings, blocking others' view from the adjacent highway.

---

[8] This allegation is also made "upon information and belief" (Filing 1-1, p. 5, ¶ 18).

26.     Ms. Haller left her vehicle with minor Wiese still inside and approached Defendant Deputy Thibedeau who was wearing his full uniform and duty belt that carried various law enforcement equipment, including handcuffs.

27.     Defendant Deputy Thibedeau informed Ms. Haller about an imminent search of her residence by law enforcement, which was a false statement.

28.     Shortly thereafter, Defendant Deputy Thibedeau asked to see Ms. Haller's breasts and Ms. Haller refused.

29.     Defendant Deputy Thibedeau then demanded to touch Ms. Haller's breasts. After she refused, Defendant Deputy Thibedeau threatened to take her to jail on a warrant which was not actually in existence.

30.     Ms. Haller again refused Defendant Deputy Thibedeau demands despite his threats of incarceration.

31.     Defendant Deputy Thibedeau then forcibly handcuffed Ms. Haller's hands behind her back and directed her to get into the backseat of his patrol pickup.

32.     While handcuffed behind her back and seated in the backseat of Defendant Deputy Thibedeau's patrol pickup, Defendant Deputy Thibedeau sexually assaulted Ms. Haller by forcibly lifting her clothing and touching her bare breasts.

33.     After the sexual assault, Defendant Deputy Thibedeau got into the driver's seat of his patrol pickup and began to drive towards the highway and away from the Benkelman Golf Club, leaving minor Wiese alone and unattended in Ms. Haller's vehicle. Ms. Haller begged Defendant Deputy Thibedeau not to leave minor Wiese behind and pleaded for him to let her go.

34.     After Ms. Haller repeatedly pleaded with him, Defendant Deputy Thibedeau stopped his patrol pickup, uncuffed Ms. Haller, and

released her. Defendant Deputy Thibedeau demanded that she not tell anyone that he sexually assaulted her because he would lose his job. Defendant Deputy Thibedeau falsely stated that he had the power to make her warrant "disappear" and that he could keep giving her information about the law enforcement matter that he fabricated.

35. Shortly after the sexual assault, Ms. Haller received a message from Defendant Deputy Thibedeau that her warrant had been "erased." This was another false statement made by Defendant Deputy Thibedeau.

36. That same day, Ms. Haller contacted authorities and Defendant Deputy Thibedeau was arrested....

(Filing 1-1, pp. 4-8, ¶¶ 13, 15, 17-19, 23-36).

## IV. Discussion

### A. Haller's Federal Constitutional Claim

Upon careful review of Plaintiffs' complaint, the court concludes that insufficient facts have been alleged to state a plausible claim for relief against the County under 42 U.S.C. § 1983. Haller's theories of recovery, as alleged in count II, are as follows:

48. Defendant Dundy and Defendant Nichols violated Ms. Haller's constitutional rights guaranteed under the United States and Nebraska Constitutions, more particularly under the provisions of the Fourth Amendment, and under federal and state law.

49. All of the acts of Defendant Dundy and Defendant Nichols alleged herein were done by said each of them, as individuals and within their official capacities under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Nebraska,

the County of Dundy, the Dundy County Sheriffs Office, and under the authority of their official capacities, respectively.

50.     By reason of each and every unlawful action described above, Ms. Haller was required to and did employ legal counsel to ensure protection and redress from the deprivation of her rights.

51.     The conduct of Defendant Dundy and Defendant Nichols alleged herein deprived Ms. Haller of her rights, privileges, and immunities secured to her by the United States and Nebraska Constitutions, their laws, rules, and regulations, and the policies embodied therein, including but not limited to the right of Ms. Haller to be free from unreasonable searches and seizures secured to her under the Fourth Amendment.

52.     Ms. Haller's right to be free from unreasonable searches and seizures as alleged herein is a right that is clearly established and one that all Defendants knew or should have known would be violated by Defendant Deputy Thibedeau.

53.     The acts, conduct, and behavior of all of the Defendants were performed knowingly, intentionally, and maliciously.

54.     Defendant Dundy and Defendant Nichols knew or should have known that deputy sheriffs require adequate training, instruction, and/or supervision in order to carry out their functions without violating the constitutional, statutory, or civil rights of the Public.

55.     Defendant Dundy and Defendant Nichols either knew or should have known that Defendant Deputy Thibedeau presented a risk that was obvious or known to the Public, including that Defendant Deputy Thibedeau posed a risk of, or it was reasonably foreseeable that he posed a risk of, sexually assaulting, falsely arresting, or falsely imprisoning the Public.

56.     Defendant Dundy and Defendant Nichols acted recklessly in conscious disregard of the risk, with deliberate indifference, and

intentionally chose not to provide adequate training, instructions, and/or supervision for Defendant Deputy Thibedeau.

57.     All Defendants' behavior is so egregious and so outrageous that it may fairly be said to shock the contemporary conscience.

58.     Defendant Dundy and Defendant Nichols also caused Ms. Haller's constitutional deprivations through its policies or customs and pattern of unconstitutional conduct that cause the constitutional violation.

59.     Defendant Dundy and Defendant Nichols were at all times relevant policymakers with final decision-making authority to establish policies and customs as to the screening, hiring, training, and supervision of its deputy sheriffs.

60.     Defendant Dundy and Defendant Nichols routinely and consistently allowed its deputy sheriffs to commit unconstitutional misconduct and were deliberately indifferent to such conduct even after notice of such misconduct.

61.     Such policies and customs were the moving force behind Ms. Haller's constitutional violations.

(Filing 1-1, pp. 12-14, ¶¶ 48-61).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality[9] can be liable under § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch*, 627 F.3d at 1257 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of*

---

[9] For purposes of this analysis, "municipalities" include counties. *See Monell*, 436 U.S. at 690 (holding that Congress "intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies.").

-10-

*Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)). "Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with 'deliberate indifference to an individual's federal rights." *Id.* (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404-07 (1997); *City of Canton*, 489 U.S. at 388-89)).

## 1. Constitutional Violation

Haller claims Thibedeau violated her Fourth Amendment right to be free from unreasonable searches and seizures (Filing 1-1, ¶¶ 48, 51). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. Cty. v. Inyo*, 489 U.S. 593, 596-97 (1989)). Haller alleges Thibedeau "forcibly handcuffed [her] hands behind her back and directed her to get into the backseat of his patrol pickup" after she refused his demand to touch her breasts (Filing 1-1, ¶ 31). This constitutes a seizure under the Fourth Amendment. *See, e.g., United States v. Tovar-Valdivia*, 193 F.3d 1025, 1027 (8th Cir. 1999) ("We have little trouble determining that the officer placed Tovar under arrest when he placed the handcuffs on him. At that moment, Tovar was restrained and, by any reasonable standard, was not free to leave."). Haller alleges Thibedeau fabricated a "law enforcement matter" as a pretext for meeting her and falsely claimed to have a warrant for her arrest (Filing 1-1, ¶¶ 23, 27, 29, 34, 35). Giving Haller the benefit of all reasonable inferences that can be drawn from the facts alleged in the complaint, *see Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) (stating Rule 12(b)(6) standard of review), count II would state a plausible Fourth Amendment "false arrest"

claim against Thibedeau, had such a claim been made.[10] *See Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019) ("Police officers violate the Fourth Amendment when they conduct an arrest without a warrant or probable cause."). Thus, the first essential element for a finding of municipal liability (i.e., a constitutional violation by a municipal officer) is sufficiently alleged.

Haller also alleges Thibedeau sexually assaulted her by forcibly lifting her clothing and touching her bare breasts while she was handcuffed in the backseat of the patrol pickup (Filing 1-1, ¶ 32). The Eighth Circuit has analyzed § 1983 claims involving sexual assaults committed by law enforcement officials under the Fourteenth Amendment. *See Haberthur v. City of Raymore*, 119 F.3d 720, 723-24 (8th Cir. 1997) (allegations that police officer showed up at claimant's work while in uniform and on duty, placed his hand under her sweatshirt, fondled her breast and chest, and implied they should engage in further sexual contact, in larger context of his threatening adverse official action by way of speeding ticket and following her in his police car, stated substantive due process claim against officer and city under § 1983); *Rogers v. City of Little Rock*, 152 F.3d 790, 796-97 (8th Cir. 1998) (police officer's conduct in following woman whose vehicle he had stopped for traffic violation to woman's residence, entering woman's home, and raping her, violated woman's clearly established due process right to be free of physical abuse by public officials).

In this case, it may be more appropriate to consider the sexual assault in the context of an "excessive force" claim under the Fourth Amendment. "If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843

---

[10] Haller has instead asserted a common law claim for false arrest against Thibedeau in count IV of the complaint (Filing 1-1, pp. 15-16).

(1998); *see Fontana v. Haskin*, 262 F.3d 871, 881-82 & n. 6 (9th Cir. 2001) (Fourth Amendment's reasonableness standard rather than substantive due process standard of Fourteenth Amendment applied to motorist's sexual harassment claim against police officer under § 1983, because alleged harassment occurred after officer arrested motorist following motor vehicle accident); *but see Rogers*, 152 F.3d at 796 ("This case is not about excessive force, but rather about nonconsensual violation of intimate bodily integrity which is protected by substantive due process. No degree of sexual assault by a police officer acting under color of law could ever be proper. The violation here is different in nature from one that can be analyzed under the fourth amendment reasonableness standard.").[11] For present purposes, however, it is not necessary to determine which standard would apply here because, on the facts alleged, Thiebedeau's conduct was objectively unreasonable and no less conscience-shocking than that of the police officer in *Haberthur*.[12]

## 2. County Liablity

The next step is to determine whether Haller has alleged sufficient facts to show that the County is responsible for the violation of her constitutional rights. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,'

---

[11] The *Rogers* majority further observed that "Morgan's assault on Rogers was also different in time and place from the type of search and seizure scene addressed in *Graham*. [*v. Connor*, 490 U.S. 386 (1989) (claim that officers used excessive force in course of arrest, investigatory stop, or other seizure is properly analyzed under Fourth Amendment).] The assault occurred after Rogers had been told she could go and Morgan had followed her home, far from the scene of the traffic stop and separated in time from it." *Rogers*, 152 F.3d at 796 (citation omitted).

[12] Haller has not asserted a § 1983 claim against Thiebedeau for the sexual assault, but has asserted a common law claim for assault and battery in count III (Filing 1-1, pp. 14-15).

or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)).

"Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton* ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

Haller alleges in conclusory fashion that the County "caused [her] constitutional deprivations through its policies or customs," that the County "routinely and consistently allowed its deputy sheriffs to commit unconstitutional misconduct and were deliberately indifferent to such conduct even after notice of such misconduct," and that the County's "policies and customs were the moving force behind [her] constitutional violations" (Filing 1-1, ¶¶ 58, 60, 61). These allegations are nothing

more than a recitation of the elements of a municipal liability claim, which does not satisfy federal pleading standards.[13] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

"At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Haller claims the County is responsible for the violation of her constitutional rights because (1) Thibedeau was not a suitable candidate to be hired as a deputy sheriff and (2) he did not receive adequate training and supervision after being hired.[14] As will be discussed below, however, the facts alleged in the complaint do not support either theory of recovery.

## a. Hiring Decision

In *Board of County Commissioners of Bryan County v. Brown*, the Supreme Court addressed the issue of municipal liability under § 1983 for a single hiring

---

[13] The Federal Rules of Civil Procedure apply to a civil action after it is removed from a state court. Fed. R. Civ. P. 81(c)(1); *see Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938-39 (8th Cir.2012) (applying federal pleading standard to claims removed to federal district court).

[14] State law identifies which officials make policy. *Jane Doe A*, 901 F.3d at 645. Under Nebraska law, the county board determines the number of deputy sheriffs and fixes their compensation, but it is the sheriff who has the power of appointment. *Buzek v. Pawnee Cty.*, 207 F. Supp. 2d 961, 971 (D. Neb. 2002); *see State v. Harris*, 161 N.W. 253 (Neb. 1917); Neb. Rev. Stat. §§ 23-1704.01 and 23-1704.4. The sheriff is a county officer and represents the county when acting in a law enforcement capacity. *Dean v. Cty. of Gage*, 807 F.3d 931, 942 (8th Cir. 2015). Nebraska sheriffs make policy on behalf of their counties. *Id.*

decision made by a sheriff. In that case, the plaintiff's kneecaps were broken when a deputy sheriff forcibly removed her from a vehicle while placing her under arrest. A jury found the deputy had used excessive force and held the county liable for the plaintiff's injuries based on the sheriff's decision to hire the deputy, who had a record of driving infractions and had pleaded guilty to various driving-related and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness. 520 U.S. at 401. The Fifth Circuit upheld the jury's verdict, but Supreme Court reversed.

Justice O'Connor observed that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Id.* at 415. Concerned that municipal liability could very easily collapse into respondeat superior liability in the context of a single, facially lawful hiring decision, the Court adopted stringent culpability and causation requirements, noting that "[a] showing of simple or even heightened negligence will not suffice." *Id.* at 407. The Court demanded that courts "carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410.

"Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411. The Court explained that "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412 (emphasis in original).

"*Bryan County* teaches us that liability may not be imposed unless a plaintiff directly links the applicant's background with the risk that, if hired, that applicant would use excessive force. In other words, a plaintiff must show that the hiring decision and the plaintiff's alleged constitutional injury are closely connected—an applicant's background is that causal link." *Morris v. Crawford Cty.*, 299 F.3d 919, 923 (8th Cir. 2002).

"Courts strictly adhere to *Bryan County*'s directive that '[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.'" *Id.* (quoting *Bryan Cty.*, 520 U.S. at 412). "The prior complaints in an applicant's background must be *nearly identical* to the type of officer misconduct that caused the constitutional deprivation allegedly suffered by a plaintiff." Id. (emphasis supplied). "Courts routinely reject attempts to satisfy *Bryan County*'s causal connection requirement where none of the prior complaints in an applicant's background were of the same or similar type of officer misconduct that caused the plaintiff's injury." *Id.* (discussing cases).

"[M]unicipalities are not necessarily liable even when an applicant's background contains complaints of physical violence, including acts of aggression and assault.... Courts have determined that such complaints must be closely aligned with a plaintiff's alleged injury, and absent that close nexus, there can be no municipal liability based on a single hiring decision.... [A] plaintiff must point to prior complaints in an applicant's background that are nearly identical to the type of misconduct that causes the constitutional deprivation allegedly suffered by the plaintiff. This is a rigorous test to be sure." *Id.* at 924 (finding no strong causal connection between deputy sheriff's background and specific constitutional violation alleged by pretrial detainee, of excessive force in utilizing a "knee drop," where slapping of an inmate was the only violent act in deputy's record when he was hired).

One case discussed by the Eighth Circuit in *Morris* is *Gros v. City of Grand Prairie*, 209 F.3d 431 (5th Cir.2000), which involved a police officer who allegedly sexually assaulted two women during traffic stops. At the time of that officer's hire, his file contained statements regarding aggressiveness, letters of reprimand and complaints for being overbearing and abusive during a prior traffic stop. The Fifth Circuit reversed the district court's judgment, concluding the police chief was not deliberately indifferent in hiring the officer, because the requisite causal connection was absent. The Fifth Circuit explained the officer "had never sexually assaulted, sexually harassed, falsely arrested, improperly searched or seized, or used excessive force against a third party." *Id.* at 435. While the officer's records suggested the police chief may have been negligent in hiring him, the Fifth Circuit determined the officer's records did not provide sufficient evidence of deliberate indifference to a third party's constitutional rights. *Id.*

Plaintiffs allege upon information and belief that Nichols appointed Thibedeau as a deputy even though he "was not qualified to be a law enforcement officer in this state, did not meet the minimum requirements to be a law enforcement officer, and had physical and aggressive behaviors and past illegal drug use in his history" (Filing 1-1, ¶ 18). These allegations are not sufficient to establish the requisite causal link between the County's decision to hire Thibedeau and Haller's alleged constitutional injuries. Although Haller alleges in general terms that the County "either knew or should have known that ... Thibedeau posed a risk of ... sexually assaulting, falsely arresting, or falsely imprisoning the Public" (Filing 1-1, ¶ 55), she fails to point to anything specific in Thibedeau's background which should have caused the County to conclude that these would be "plainly obvious" consequences of hiring him. *See Bryan Cty.*, 520 U.S. at 412. Even if the County did not perform an adequate background check, "an instance of inadequate screening is not enough to establish 'deliberate indifference.'" *Id.* at 411. "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular

applicant produced a specific constitutional violation." *Id.* at 410-11 (emphasis in original).

b. Failure to Train or Supervise

Municipal liability arises "only where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the [employee] come[s] into contact." *City of Canton*, 489 U.S. at 388. Deliberate indifference in this context "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (quoting *Bryan Cty.*, 520 U.S. at 410). The issue is whether, "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (alteration in original) (quoting *City of Canton*, 489 U.S. at 390).

To state a viable § 1983 claim for "failure to train" against the County, Haller must plead facts sufficient to show that (1) the County's officer-training practices were inadequate; (2) the County was deliberately indifferent to the rights of others in adopting these training practices, and the County's failure to train was a result of deliberate and conscious choices it made; and (3) the County's alleged training deficiencies caused Haller's constitutional deprivation. *See Cotton v. Douglas Cty.*, No. 4:18CV3138, 2018 WL 6067513, at *3 (D. Neb. Nov. 19, 2018); *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Under section 1983, "a claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007)). "Neither claim can succeed without evidence the municipality '[r]eceived notice of

a pattern of unconstitutional acts committed by [its employees].'" *Id.* at 1216-17 (quoting *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)). "Absent some form of notice, the [municipality] cannot be deliberately indifferent to the risk that its training or supervision of [its employee] would result in 'a violation of a particular constitutional or statutory right.'" *Id.* at 1217 (quoting *Bryan Cty.*, 520 U.S. at 411).

The court "applies an objective standard of deliberate indifference ... which 'permit[s] liability to be premised on obviousness or constructive notice.'" *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (second alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cty.*, 520 U.S. at 409); *see Ball*, 594 F.3d at 1002 (requiring "notice of a pattern of unconstitutional acts committed by subordinates" to establish a failure-to-supervise claim); *Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019) (same). Alternatively, a plaintiff may show that, in light of the officer's assigned duties, the need for more or different training or supervision was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *see P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 660 (8th Cir. 2001) ("Notice may be implied where the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious or where a pattern of misconduct indicates that the [municipality's] responses to a regularly recurring situation are insufficient to protect ... constitutional rights."). "In other words, the plaintiff must demonstrate that the [municipality] 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *Thelma D. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991)).

Haller's allegations again fall far short of the mark. She merely states a general proposition that the County "knew or should have known that deputy sheriffs require adequate training, instruction, and/or supervision in order to carry out their functions without violating the constitutional, statutory, or civil rights of the Public" (Filing 1-1, ¶ 54), and concludes that the County "acted recklessly in conscious disregard of the risk, with deliberate indifference, and intentionally chose not to provide adequate training, instructions, and/or supervision for ... Thibedeau" (Filing 1-1, ¶ 56).While Haller asserts that the County "either knew or should have known that ... Thibedeau presented a risk that was obvious or known to the Public, including that ... Thibedeau posed a risk of, or it was reasonably foreseeable that he posed a risk of, sexually assaulting, falsely arresting, or falsely imprisoning the Public" (Filing 1-1, ¶ 55), there are no facts alleged to support this assertion.[15] For example, it is not alleged that Thibedeau was guilty of any such misconduct between October 1, 2016, when he was appointed as a deputy sheriff, and March 22, 2017, when he kidnapped and sexually assaulted Haller, nor is it alleged that other deputies engaged in sexual assaults or false arrests or imprisonments. Furthermore, the criminal acts Thibedeau committed on March 22, 2017, were not an "obvious" risk for which the County should have recognized there was a need for additional training or supervision.

---

[15] Plaintiffs allege that "Thibedeau never obtained a certificate or diploma from the Nebraska Commission on Law Enforcement and Criminal Justice or from the Nebraska Law Enforcement Training Center" (Filing 1-1, ¶ 17). This lone fact, while perhaps material to the threshold issue of whether the County's training procedures were inadequate, does not provide a sufficient basis for the court to draw a reasonable inference that the County is liable for the violation of Haller's constitutional rights. *See Ball*, 594 F.3d at 997 ("Even though the training [the deputy] received was minimal at best, that finding alone will not satisfy a § 1983 claim for failure to train.") (citing *City of Canton*, 489 U.S. at 390-91). However, the court also notes that Thibedeau could function as a law enforcement officer for up to one year without receiving the required certificate or diploma. Neb. Rev. Stat. § 81-1414. He was hired on October 1, 2016 and the assault took place on March 22, 2017.

The Eighth Circuit "squarely addressed whether a failure to train officers not to engage in sexually deviant behavior was actionable under § 1983 in *Andrews*." *Ball*, 594 F.3d at 998.

> In *Andrews*, officers were called to respond to reports of underage drinking taking place at the plaintiff's residence. During that response, an officer took a particular interest in the plaintiff. The chief of police noticed the officer's unusual interest in the plaintiff and warned him not to fraternize with minor females while on duty. In addition, the chief of police had previously received a number of complaints regarding an unnamed officer who was impermissibly fraternizing with females while on duty. Later that same evening, the officer returned to the plaintiff's house to respond to another reported disturbance. During this second response, he invited the plaintiff into his police car, took her to his personal car, drove her to an isolated area, and raped her. The plaintiff brought a § 1983 action against the chief of police in his official capacity for his failure to train the officer.

*Id.* (citations omitted). The Eighth Circuit affirmed the district court's grant of summary judgment in favor of the city on the plaintiff's failure-to-train claim, concluding that the city was not deliberately indifferent, and, moreover, that causation was lacking. The Court stated:

> In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women. Moreover, even if the training was in some manner deficient, the identified deficiency in a city's training program must be closely related to the ultimate injury such that the deficiency in training actually caused the police officers' offending conduct. [The plaintiff] simply cannot demonstrate the close relationship necessary to conclude that the city's failure to properly train [the officer] caused him to rape [the plaintiff] or even raises a question of fact as to causation.

*Andrews*, 98 F.3d at 1077 (internal quotations and citation omitted).

The Eighth Circuit reached the same result in *Ball*, where a deputy sheriff (Fite) sexually assaulted a detainee (Parrish). The county sheriff (Ball) hired Fite as a jailer on December 26, 2002, transferred him to a road deputy position on March 14, 2003. "Although Fite operated as a law enforcement officer, he received little to no training on how to properly serve in that capacity. In fact, the only training Fite received was one to two days of riding with the deputy whose job he was hired to fill. Moreover, while Fite did receive a policy manual, he was not required to read it, and, in fact, he never actually read it. Fite was scheduled to go through the mandatory Law Enforcement Training Academy, but Fite had not yet attended the Academy at the time of the incident giving rise to this dispute. Nonetheless, Sheriff Ball permitted Fite to operate as an almost completely unsupervised Road Deputy." 594 F.3d at 996.

Fite resigned to take a position with the department of corrections; his last scheduled day with the sheriff's department was June 11, 2003. One week prior to his last day, Fite came into contact with Parrish at a convenience store where she was employed. Fite asked Parrish if she would go on a date with him, but Parrish declined. Fite subsequently learned that Parrish had several outstanding warrants for her arrest and that she owed fees and fines as a result of those warrants. On his last day with the sheriff's department, Fite drove to the convenience store, arrested Parrish, and transported her to the county jail. While en route to the county jail, Fite informed Parrish that he would not have arrested her if she had simply agreed to go out with him. Once they arrived at the jail, Fite told Parrish that he could get her fines reduced if she would show him her breasts. Parrish eventually complied with the request, raised her shirt, and exposed her breasts. Fite then grabbed Parrish's exposed breast. *Id.* Fite was later arrested and pled guilty to second degree sexual assault. *Id.* at 997.

Parrish brought a § 1983 action against Fite and Ball in their individual and official capacities. The district court granted Ball qualified immunity in his individual capacity, but otherwise permitted the action to proceed. After a one-day bench trial, the district court found Fite liable in his individual capacity and also held Fite and Ball

jointly liable in their official capacities as a result of the county's failure to train Fite. Ball appealed the finding of official-capacity liability for the failure to train Fite. *Id.* The Eighth Circuit reversed, finding, first of all, that the county sheriff had no actual or constructive notice that the sexual assault was likely to occur, and, secondly, that there was no patently obvious need to train a deputy not to sexually assault women:

> Although Fite received substantially less training than did the officer in *Andrews*, this case, nonetheless, presents a less egregious case of failure to train than was at issue in *Andrews*. In *Andrews*, the municipality had constructive notice of a general need to train its officers not to fraternize with women while on duty. [98 F.3d] at 1073. Moreover, the chief of police had actual notice that the offending officer was taking an interest in the plaintiff. *Id.* Here, no deputies under Sheriff Ball had ever engaged in sexually impermissible or suggestive conduct. And nothing in Fite's record suggested that he had a proclivity to engage in sexually prurient behavior.
>
> As in *Andrews*, where we found no patently obvious need to train an officer not to rape young women even in the face of actual knowledge of deviant behavior, we do not believe that there is a patently obvious need to train an officer not to sexually assault women, especially where there is no notice at all that such behavior is likely. An objectively reasonable officer would know that it is impermissible to touch a detainee's sexual organs by forcible compulsion. *See Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (holding that the court was "not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates" and that "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior"). Moreover, Fite himself acknowledged in his testimony that he knew such behavior was wrong. Thus, while it may have been wise to tell officers not to sexually assault detainees, it is not so obvious that not doing so would result in an officer actually sexually assaulting a female detainee.

*Id.* at 999. *See also Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012) (sheriff faced no patently obvious need to train crime scene investigation employees not to fabricate

evidence); *Marsh*, 902 F.3d at 753 (no patently obvious need for county to train jail employees not to sexually assault female inmates); *Fort Zumwalt R-II Sch. Dist.*, 920 F.3d at 1189 (no patently obvious need for school district to provide additional training or supervision to prevent elementary school teacher from using hidden camera to videotape students in the nude inside cabins during school district sponsored overnight camps).

In *Ball*, the Eighth Circuit also determined as a matter of law, as it had in *Andrews*, that a lack of training had not caused the plaintiff's injury:

> Moreover, even if Sheriff Ball's decision not to train Fite on the "contents of the law" [concerning sexual assault] was made with a deliberate disregard for other's rights, Parrish still must show that this "deliberate conduct [of] the [county] was the 'moving force' behind the injury alleged." [*Bryan Cty. v.*] *Brown*, 520 U.S. at 404, 117 S.Ct. 1382 (emphasis omitted). Here, while the district court did make a factual finding regarding the causal link between the county's deliberate misconduct and Parrish's ultimate injury, we find that causal connection too remote as a matter of law to "demonstrate the close relationship necessary to conclude that the [county's] failure to properly train [Fite] caused him" to sexually assault Parrish. *Andrews*, 98 F.3d at 1077 (third alteration in original).

> We recognize that causation is generally a question of fact. *Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir.1994). However, where the causal link is too tenuous such that "the question is so free from doubt as to justify taking it from the [fact finder]" we may decide the issue as a matter of law. *Id.* 779-80; *see also Andrews*, 98 F.3d at 1077 (finding that summary judgment was appropriate on the causation issue because the plaintiff "could not even raise[ ] a question of fact as to causation").

> The district court found a causal connection by holding that since Fite would not have sexually assaulted Parrish if he knew he was committing a felony, that training on the contents of the law would have prevented the constitutional violation.... While this finding may establish

-25-

"but for" causation, it ignores the additional requirement that "'the identified deficiency in [the county's] training program ... be closely related to the ultimate injury.'" *Andrews*, 98 F.3d at 1076 (quoting *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197); *see also Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that a constitutional violation was "too remote a consequence" of the defendants' action "to hold them responsible under the federal civil rights law"). As we have noted, in cases such as this where the "'plaintiff claims that the [local government] has not directly inflicted an injury, but nonetheless has caused an employee to do so,'" the causation standard we apply is a "rigorous" one. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir.2007) (en banc) (quoting *Brown*, 520 U.S. at 405, 117 S.Ct. 1382).

Here, even though Fite should have been more properly trained on the "contents of the law," Fite's intentional sexual assault of Parrish is too remote a consequence of such a failure to meet the rigorous causation standard necessary to hold the county liable.... We see no immediate significant distinction for the purposes of municipal liability between knowing that an act is wrong and knowing that something is so wrong that it is punishable by a year or more of jail time. Since a reasonable officer would know that intentionally sexually assaulting a detainee was inappropriate, and indeed, since Fite himself knew that such conduct was impermissible, Parrish has not demonstrated the close relationship necessary to conclude that the county's failure to train Fite that sexual assault constitutes a felony *caused* Fite to sexually assault Parrish.

594 F.3d at 1000 (emphasis in original).

In summary, Haller has failed to state a viable § 1983 claim against the County for failing to train and supervise Thibedeau because (1) no facts are alleged to show that the County received notice of a pattern of unconstitutional acts committed by Thiebedeau or other deputy sheriffs, (2) there is no patently obvious need for training or supervision to prevent deputies from engaging in criminal activity such as kidnapping, sexual assault, and oppression under color of offense, and (3) the alleged lack of training and supervision did not cause Thibedeau to violate Haller's

constitutional rights.[16] Haller has also failed to state a viable § 1983 claim against the County for hiring Thibedeau because no facts are alleged to show a strong causal connection between the hiring decision and Haller's constitutional injuries, i.e. there is no showing that Thiebedeau's background made it highly likely he would lure Haller to a remote location to discuss a non-existent law enforcement matter, falsely claim that Haller's residence was about to be searched before asking to see her breasts, demand to touch Haller's breasts when she refused to show them to him, threaten to take Haller to jail on a non-existent warrant when she refused to allow him to touch her breasts, handcuff Haller and put in her the backseat of the patrol pickup when she again refused, sexually assault Haller by forcibly lifting her clothing and touching her breasts, and drive off with Haller in the patrol pickup before finally releasing her.

The allegations in count II of the complaint are merely "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Because Haller has not nudged her § 1983 claim "across the line from conceivable to plausible," it must be dismissed. *Id.*

The dismissal will be with prejudice. *See Teague v. Regent Fin. Grp., Inc.*, No. 18-2783, __ Fed. App'x __, 2019 WL 2202758, at *1 (8th Cir. May 21, 2019) (unpublished) (holding district court did not abuse its discretion in failing to sua sponte allow plaintiff to amend his complaint before the court dismissed it with prejudice under Rule 12(b)(6)) (citing *Murphy v. Aurora Loan Servs.*, LLC, 699 F.3d 1027, 1034 (8th Cir. 2012) (dismissal with prejudice is appropriate where the party never submitted proposed amended complaint or clarified what one might have contained); *Carlson v. Hyundai Motor Co.*, 164 F.3d 1160, 1162 (8th Cir. 1999) ("A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted proposed amended pleading."));

---

[16] In fact, Haller alleges "Thibedeau demanded that she not tell anyone that he sexually assaulted her because he would lose his job" (Filing 1-1, ¶ 24).

*see Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012) ("The district court did not abuse its discretion in accepting the [plaintiffs'] strategic decision not to amend the complaint.").[17]

## B. Informal Request for Leave to Amend

Although Haller concludes her brief with a request that she be allowed to replead in the event the County's motion to dismiss is granted (Filing 14, p. 13), "[r]equesting leave to amend in a brief is not a proper motion." *PTUSA York, LLC v. Interstate Commodities, Inc.*, No. 8:17CV427, 2018 WL 3201900, at \*5 (D. Neb. Feb. 15, 2018) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)). "A request for a court order must be made by motion" and must "state with particularity the grounds for seeking the order" and "the relief sought." Fed. R. Civ. P. 7(b)(1). Additionally, "to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (quoting *Wolgin v. Simon*, 722 F.2d 389, 395 (8th Cir. 1983)); *see* NECivR 15.1 ("A party who moves for leave to amend a pleading ... must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments.").

"A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) (citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009)); *see Misischia v. St. John's Mercy Health Systems*, 457 F.3d 800, 805 (8th Cir.2006) (district court did not abuse its discretion by denying plaintiff leave to amend where he made no motion and did not explain substance of proposed

---

[17] Plaintiffs could have filed an amended complaint as a matter of course within 21 days after being served with Defendants' motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B).

amendment, but only included one-line request in his brief); *see also Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1236 (8th Cir. 2010) ("Plaintiffs argue the district court abused its discretion in denying their request, first made in their reply to the motion for judgment on the pleadings, that they be given leave to amend their Complaint. Plaintiffs never submitted a proposed amended complaint nor explained what amendments would be made, which is reason enough to uphold the denial.") (citing *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009) (footnote in plaintiffs' brief requesting leave to amend was insufficient)). Because Plaintiffs have not filed a motion, or even indicated in what manner the complaint might be amended to state a viable claim for relief under § 1983, the informal request for leave to amend will be denied.

## C. Remand to State Court

A federal district court has the discretionary power to decline jurisdiction where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, (1988); *see Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1045 (8th Cir. 2014) ("After the § 1983 claims were dismissed, the district court acted within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims.").

The court concludes that remand to state court is appropriate in this case, which is still at the pleading stage, and therefore will not consider the County's motion to dismiss with reference to any state-law claims alleged in counts I and II of the

complaint. The court also declines to consider Plaintiffs' recently filed motion for entry of a default judgment against Thibedeau on counts III through VI (Filing 16).

## V. CONCLUSION

Count II of Plaintiffs' complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983. The court declines to exercise supplemental jurisdiction over all remaining claims, and will remand this case to state court.

IT IS THEREFORE ORDERED:

1. Defendants' motion to dismiss (Filing 3) is granted in part and denied in part, as follows:

   a. Count II of Plaintiffs' complaint is dismissed with prejudice to the extent it is claimed that Defendant Dundy County and Defendant Nichols violated Plaintiff Haller's rights under the United States Constitution or federal statutes.

   b. In all other respects, Defendants' motion to dismiss is denied without prejudice.

2. Plaintiffs' informal request for leave to amend is denied.

3. Pursuant to 28 U.S.C. § 1367(c)(3), this case is remanded to the District Court of Dundy County, Nebraska.

4. Judgment shall be entered by separate document.

5.  The clerk of the court is directed to mail certified copies of (a) the Judgment and (b) this Memorandum and Order to the Clerk of the District Court of Dundy County, Nebraska, and may take any other action necessary to effectuate the remand.

DATED this 2nd day of July, 2019.

                        BY THE COURT:

                        s/ *Richard G. Kopf*
                        Senior United States District Judge